# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

**United States of America**

   **v.**                                 **No. 3:22-CR-88-DJH**

**Quadrant Magnetics, LLC et al.**

---

## DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF EXCULPATORY EVIDENCE

Actions speak louder than words. The most compelling aspect of the government's response to Defendants' motion is the State Department's alacrity producing unredacted copies of the documents at issue. According to the government, the State Department refused to provide the unredacted information "absent legal authority demonstrating it was required to do so." (D.N. 171, PageID.2357.) Defendants' motion must have conclusively so demonstrated, for State complied within days. Defendants never should have had to file the motion.

The motion is not moot, however. Other relief remains available and should be provided. This matter is one instance of how the government writ large—to include the State Department—continues to resist Defendants' constitutional right to defend themselves by vigorously contesting the commodity-jurisdiction determinations (CJDs) at the heart of this case. The government is attempting to shield the State Department employees responsible for the CJDs by providing constitutionally deficient substitute expert witnesses (*see* D.N. 144, 161) and by resisting the production of these witnesses at trial by raising inapplicable *Touhy* regulations (*see* D.N. 140, 159). The Court thus should hold that the government did indeed suppress *Brady* material—whether because it could practicably obtain it, or because the State Department's Directorate of Defense Trade Controls (DDTC) is part of the prosecution team—so that the government will then be obligated to expeditiously produce any *other* exculpatory information from DDTC.

Nothing in the government's response should persuade the Court otherwise. The response primarily consists of (1) the government's opinion about how Defendants might have presented their case without the evidence; (2) discussion of requests Defendants did not make, such as for personnel files and direction to specific correspondence in the discovery record; and (3) attempts to portray the State Department as some distant entity (it is not) rather than part of the prosecution team (which it is).

## ARGUMENT

A successful *Brady* claim requires that (1) the evidence in question be favorable to the defendants; (2) the government has suppressed the relevant evidence, either purposefully or inadvertently; and (3) the government's actions have prejudiced the defendants. *See Hughbanks v. Hudson*, 2 F.4th 527, 536 (6th Cir. 2021). "Favorable evidence" is "exculpatory" or "impeaching." *Id*. The government has a continuing duty to disclose *Brady* material to defendants in criminal matters. *See* Fed. R. Crim. P. 16(c).

"Mootness generally depends on 'whether the relief sought would, if granted, make a difference to the legal interests of the parties.'" *United States v. City of Detroit*, 401 F.3d 448, 450–51 (6th Cir. 2005) (quoting *McPherson v. Mich. High School Athletic Ass'n, Inc.*, 119 F.3d 453, 48 (6th Cir. 1997) (en banc)).

### 1. Defendants' motion is not moot.

Defendants retain a "legally cognizable interest in the outcome" of their motion. *Id.* at 450 (quoting *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001)). Defendants argued that the government suppressed *Brady* evidence because it either had the practical ability to obtain the evidence or because the State Department is part of the prosecution team. (*See* D.N. 162, PageID.2255–57.) The production of the unredacted documents does not resolve those questions; indeed, the State Department's rapid post-motion production of the

documents only highlights them. And if either question is answered affirmatively, then the government must produce any *other* exculpatory information from the State Department's DDTC.

Further, the voluntary-cessation exception to mootness applies. "A defendant's voluntary cessation of a challenged practice moots a case only in the rare instance where subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (quoted source omitted). Even granting the additional "solicitude" given "cessation of the allegedly illegal conduct by government officials," *id.*, the government has failed to meet its heavy burden. The State Department's refusal to produce unredacted documents is just one instance of the agency and the government attempting to insulate the CJD participants from scrutiny. (*See* D.N. 144, 161; 140, 159.) Further, the government's *Brady* obligation is an ongoing one, so the production of *these* exculpatory documents does not abate the government's requirement to produce any *others* the State Department has.

## 2.   The government has suppressed *Brady* evidence.

### 2.1.   The evidence is favorable to Defendants.

The government's response offers no justification for its assertion that the evidence at issue is not favorable to Defendants. Instead, the government argues principally that Defendants have viable alternatives for presenting their case. (*See generally* D.N. 171, PageID.2360–63.) But that is not the test, nor is the argument persuasive.

*i. The need for names.* The government first argues that Defendants do not need the CJD participants' names to present evidence of (1) interagency disagreements about ITAR applicability, and (2) the government's perfunctory commercial-equivalent analysis. (*See id.* at PageID.2360–61.) But without the names, Defendants cannot call those witnesses to the stand or

know if a witness *on* the stand is the one who wrote a dissenting or shoddy opinion. That would severely hamper the effectiveness of Defendants' cross-examination and their case in chief. It is no answer that Defendants should resort to open-court discovery by asking the government witnesses who these secret people are during cross-examination. (*See id.* at PageID.2362 n.7.) If no witness knows, then the government would escape its *Brady* obligation to disclose their names. Further, an on-the-stand game of Guess Who would violate the requirement that *Brady* information be disclosed pretrial, or "in time for effective use at trial." *See* Fed. R. Crim. P. 16(a)(1)(E); (D.N. 37, PageID.126). For instance, disclosure or discovery during trial may be too late to cross-examine witnesses who have already testified or to subpoena them for trial. *See United States v. Spry*, 238 F. App'x 142, 147 (6th Cir. 2007) ("a defendant must show what he would have done different had he been given more time to address the *Brady* evidence"). Nor does it suffice for Defendants to issue *Touhy* requests "without the names of the analysts" as the government suggests. (D.N. 171, PageID.2361.) A subpoena for witness testimony is not particularly useful without the name of the witness, and there is little chance the analysts' home agencies would identify them. The State Department, after all, redacted their names, so it would not be so inclined. The other agencies may follow State's lead or simply be incapable of identifying their redacted analyst names.

    *ii. The DHS agent's involvement.* The government next contends that Michael Zanghi, the DHS agent who led the investigation, was not the State Department's principal source of information for the articles examined. (D.N. 171, PageID.2361.) The government is incorrect and, yet again, fails to address the favorability of the evidence to Defendants. While General Electric Aviation (GE) and General Dynamics (GD) may have been a source of information for the DHS agent and the State Department, the DHS agent was demonstrably State's principal source of information for requests at issue in this case. (*See, e.g.*, D.N. 162-2, PageID.2292–93, 2303 (documenting the

DHS agent's provision of commodity jurisdiction application materials to State with a request "initiated as part of an ongoing investigation[.]").) The DHS agent was State's primary source, notwithstanding any contact with GE and GD. (*See id.* at PageID.2292.)

Even if the DHS agent was not State's principal source, the government has still not addressed how that would undermine the documents' favorability to Defendants. (*See* D.N. 171, PageID.2361–62.) The DHS agent was at least one of State's sources, and the identities of the individuals who received information from, and coordinated with, the DHS agent is favorable to Defendants. That information is needed so Defendants can show how the DHS agent's involvement may have both biased and limited the CJD participants' inquiry, as explained in Defendants' motion.[1] The absence of that impeachment evidence before the jury would "undermine[] confidence in the outcome of the trial." *United States v. Stamper*, 91 F. App'x 445, 451 (6th Cir. 2004) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)).

*iii. The inability to conduct due diligence.* The government claims Defendants seek personnel file–type details. (*See* D.N. 171, PageID.2362.) Not so. Rather, Defendants argue that without the CJD participants' mere names, they cannot do *any* work to explore the individuals' credibility and reliability as to the CJD processes. As such, the government's reliance on *United States v. Palazzola* is misplaced. *See* No. 19-20235, 2020 U.S. Dist. LEXIS 138327, at *17 (E.D. Mich. Aug. 4, 2020).

The government likewise answers an argument not made when it states that "[i]t is not required to direct Defendants to exculpatory evidence within the discovery provided." (D.N. 171, PageID.2363.) That is not what Defendants have sought; instead, Defendants' motion explicitly

---

[1] The government wrongly argues that Defendants' brief suggested the DHS agent's name was redacted. (D.N.171, PageID.2361 n.6.) The government conjures something never argued or implied. The agent's name was included among the materials Defendants filed in support of their motion. (*See* D.N. 162-2, PageID.2292.)

stated that "without [the CJD participants'] identities, Defendants cannot even run their names through the records database in this case." (D.N. 162, PageID.2255.) Defendants plainly refer to their own due-diligence efforts and not additional, unspecified discovery from the government or direction to previously produced information. As such, the government's reliance on *Warshak* and *Newman* is also misplaced. *See United States v. Warshak*, 631 F.3d 266, 296 (6th Cir. 2010); *United States v. Newman*, No. 3:19-CR-59-TAV-DCP, 2020 U.S. Dist. LEXIS 232362, *13 (E.D. Tenn. Dec. 10, 2010)). Likewise, without the names, Defendants cannot attempt to interview the witnesses pretrial and learn additional information to help their case.

*iv. Miscellaneous theories.* In a lengthy footnote, the government also gestures at various other theories. (*See* D.N. 171, PageID.2360 n.5.) The government suggests, but takes no position, that disagreement among agencies about whether an item is ITAR-controlled is irrelevant. For the reasons stated throughout Defendants' motion, it surely is relevant. If there is any doubt on that question, it should be resolved at trial in the full context of the evidence. The government also suggests that some of the CJD evidence could still be inculpatory because, even if not ITAR-controlled, it could be EAR-controlled (under the Commerce Department's Export Administration Regulations). It is exculpatory because the statute of limitations for an EAR violation has passed for those items reviewed. *See* 18 U.S.C. § 3282. The government also re-raises its unjust and legally incorrect argument that Defendants should be imprisoned even if they did not export ITAR-controlled items. That is wrong too for reasons Defendants have stated and anticipate elaborating in future proceedings. (*See* D.N. 172, PageID.2375.)

**2.2.   The government's response confirms that it suppressed the material.**

The speed and apparent ease with which the government produced the unredacted documents only helps show that the government did, in fact, suppress this evidence. As noted, a

successful *Brady* claim requires that the government have suppressed exculpatory evidence, either purposefully or inadvertently. *See Hughbanks v. Hudson*, 2 F.4th 527, 536 (6th Cir. 2021) (citations omitted). "*Brady* and its progeny have recognized a duty on the part of the prosecution to disclose material evidence that is favorable to the defendant over which the prosecution team has control." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007); *see also* Fed. R. Crim. P. 16(a)(1)(E) ("the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, [etc.], if the item is within the government's possession, custody, or control and [] the item is material to preparing the defense . . . ."). The government cites *Graham* for the idea that the information here was not under its control, but *Graham* is inapposite. There, the information belatedly produced at trial was from a Mr. Allen, a cooperating but private citizen, one who under the facts did not amount to effectively a government agent and instead "remained an independent actor." 484 F.3d at 417. But "cooperating witnesses such as Allen stand in a very different position in relation to the prosecution than do police officers and other governmental agents." *Id.*

We appreciate the government's representations that it does not have direct access to the State Department's databases, and that the State Department apparently has been resistant to meeting its *Brady* obligations despite the Justice Department's requests. But that does not explain how the government earlier obtained even the redacted CJD documents, nor how or why State so quickly produced the unredacted versions after this motion was filed, if not for some practical ability of the government to obtain them or State's recognition of its own ill-founded legal position.

The State Department's actions thus undercut the government's argument that State is not part of the prosecution team. (*See id*. at PageID.2358–60.) While preparing CJDs are indeed a "routine part of DDTC's responsibilities," here the State Department knowingly did so at the

behest of law enforcement, as the government readily acknowledges. (*Id*. at PageID.2358 (citing 22 C.F.R. § 120.12).) The Sixth Circuit has not had occasion to specifically address whether and to what extent an investigation is a "joint investigation" with another agency. *See Colemon v. City of Cincinnati*, No. 21-5968, 2023 U.S. App. LEXIS 20967, *15 (6th Cir. Aug. 9, 2023). It has, however, indicated that an investigation may be sufficiently "joint" to extend *Brady* obligations to a non-prosecuting agency when, as here, that agency was an integral part of the investigative activities underlying a prosecution. *See id*. at *14–15. The government does not deny that the State Department was intimately involved in the CJDs undergirding this case, even if it may shy away from acknowledging the State Department's involvement as "investigative." *See* D.N. 171, PageID.2358–59. As the government notes, the State Department even had permission to contact GD directly and received information from a GD senior manager in its regulatory-compliance department. (*See id.*, PageID.2361–62.)

Under a totality-of-the-circumstances or multifactor approach, as discussed in *Colemon* and exemplified by *United States v. Pierre*, the State Department fits as part of the prosecution team. *See Colemon*, 2023 U.S. App. LEXIS 20967, *15–16; *Pierre*, (S3) 22 Cr. 19 (PGG), 2023 U.S. Dist. LEXIS 220058, *19–20 (S.D.N.Y. Dec. 11, 2023). State's involvement in the CJD process included "review[ing] documents gathered by . . . the prosecution" (the materials from the DHS agent) and "shar[ing] documents with the prosecution" (the CJDs and their underlying analyses). *Pierre*, 2023 U.S. Dist. LEXIS 220058, *19–20. Likewise, the State Department's preparation of the CJDs specifically for what it knew to be a criminal investigation and contemplated prosecution (*see* D.N. 144, PageID.1991–92) constitutes "others acting on the government's behalf." *Colemon*, 2023 U.S. App. LEXIS 20967, *15 (quoting *Kyles*, 514 U.S. at 437. It also shows that State and Justice "work as a team and share resources," *id.* (citing *United*

*States v. Ellison*, 527 F. Supp. 3d 161, 166 (D.P.R. 2021)), and State "participated in developing a case for trial," *id.* at \*16 (citing *Stano v. Butterworth*, 51 F.3d 942, 946 (11th Cir. 1995)).

Further, the government's attempt to downplay the State Department's contribution as "limited information" (D.N. 171, PageID.2359), is undermined by the government's designation of State employee Alex Douville as a fact and expert witness who will testify about the CJDs at issue, as he has done in the past. These too are facts favoring prosecution-team status. *See Pierre*, 2023 U.S. Dist. LEXIS 220058, at \*20 ("the other agency . . . played a role in the development of prosecutorial strategy, or . . . accompanied the prosecution to court proceedings").

The government also attempts to distinguish two of Defendants' cases, though without any analysis. (*See* D.N. 171, PageID.2358 n.3.) Defendants cited *Moldowan v. City of Warren* for the basic proposition that *Brady* obligations extend to law-enforcement authorities on prosecution teams. *See* 573 F.3d 309, 335 (6th Cir. 2009), *amended and superseded*, 578 F.3d 351 (6th Cir. 2009). And its reasoning applies here: "because the police are just as much an arm of the state as the prosecutor, the police inflict the same constitutional injury when they hide, conceal, destroy, withhold, or even fail to disclose material exculpatory information." 578 F.3d at 379. The government itself argues that the State Department "is responsible for providing the final determination of whether an article is covered by the [U.S. Munitions List]." (D.N. 171, PageID.2360 n.5.) State thus is indisputably "an arm of the state."

This point is reinforced by *Spencer*, which shows that individuals like lab chemists who provide key information necessary for the prosecution to prove the elements of charged offenses may be part of the prosecution team. *See United States v. Spencer*, No. 13-10196-RWZ, 2015 U.S. Dist. LEXIS 189672, at \*25–26 (D. Mass. Oct. 8, 2015), *aff'd*, 873 F.3d 1 (1st Cir. 2017). Mr. Douville's anticipated role at trial is analogous to that of a police officer or lab analyst insofar as

he is likely to offer testimony on behalf of DDTC that the government will need to try to prove its case. This all supports the conclusion that DDTC is very much a part of the prosecution team for purposes of *Brady* obligations. For these reasons, the Court should find that the government suppressed the *Brady* material at issue.

### 2.3.   Withholding the material prejudices Defendants.

The government's response devotes six lines to the prejudice prong of the *Brady* test. The government asserts, without discussion, that "Defendants cannot show a 'reasonable probability'" that the evidence at issue would change the outcome at trial. (D.N. 171, PageID.2363 (citing *United States v. Bagley*, 473 U.S. 667, 684 (1985)).) The government's continued suppression of the identities of the authors of State's CJD documents, however, would have materially harmed Defendants' ability to prepare for trial as discussed in their motion and above. That Defendants may have to submit additional *Touhy* requests does not render the government's concealment of identities of individuals involved in the CJD processes underlying this prosecution any less prejudicial. (*See id.*) Had the government not correctly chosen to adjust course and produce the unredacted materials, the Defendants may have been forced to go to trial without vital exculpatory information that will leave the jury with reasonable doubt and thus find Defendants not guilty.

### CONCLUSION

For these reasons, the Court should grant Defendants' motion, thereby placing the government on notice of its *Brady* obligation to produce any other exculpatory information in the State Department's DDTC office.

Dated: April 10, 2024                    Respectfully submitted,

                                         */s/ John Brownlee*
                                         John L. Brownlee (*pro hac vice*)
                                         William F. Gould *(pro hac vice)*
                                         Timothy Taylor *(pro hac vice)*
                                         Caitlin Eberhardt *(pro hac vice)*
                                         HOLLAND & KNIGHT LLP
                                         1650 Tysons Blvd., Suite 1600
                                         Tysons, VA 22201
                                         T: 703.720.8053
                                         F: 703.720.8610
                                         John.Brownlee@hklaw.com
                                         William.Gould@hklaw.com
                                         Timothy.Taylor@hklaw.com
                                         Caitlin.Eberhardt@hklaw.com
                                         *Counsel for Quadrant Magnetics, LLC*

                                         */s/  Kent Wicker (with permission)*
                                         Kent Wicker
                                         WICKER / BRAMMELL PLLC
                                         323 W. Main Street, 11th Floor
                                         Louisville, Kentucky 40202
                                         (502) 541-5533
                                         Kent@wickerbramel.com
                                         *Counsel for Phil Pascoe*

                                         */s/  Patrick Renn (with permission)*
                                         Patrick J. Renn
                                         Smith & Helman
                                         600 W. Main Street, Suite 100
                                         Louisville, KY 40202
                                         502-540-5700
                                         Fax: 502-568-3600
                                         prenn@600westmain.com
                                         *Counsel for Scott Tubbs*

                                         */s/  Scott Cox (with permission)*
                                         Scott C. Cox
                                         Cox & Mazzoli, PLLC
                                         600 W. Main Street, Suite 300
                                         Louisville, KY 40202
                                         502-589-6190
                                         502-584-1744
                                         CoxECF@aol.com
                                         *Counsel for Monica Pascoe*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2024, I filed the foregoing using the Court's ECF system, and a copy of the same was electronically served upon all attorneys of record for the United States via electronic mail.

/s/ *John Brownlee*