UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                                              Plaintiff,

v.                                                                       Criminal Action No. 3:22-cr-88-DJH

PHIL PASCOE (1),
SCOTT TUBBS (2),
MONICA PASCOE (3), and
QUADRANT MAGNETICS, LLC (4),                                              Defendants.

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Defendants Phil Pascoe, Scott Tubbs, Monica Pascoe, and Quadrant Magnetics, LLC moved to dismiss allegations that they violated the law against smuggling goods from the United States by emailing magnet schematics to Chinese manufacturers, arguing that the statute applies only to physical goods and not to digital information sent by email. (Docket No. 86)  The government opposed the motion (D.N. 108), and the Court heard oral argument on this and other pretrial motions on April 18, 2024.  (D.N. 177)  After careful consideration, the Court will grant the motion for the reasons set out below.

**I.**

Count Nine of the Second Superseding Indictment, captioned "Smuggling goods from the United States," charges the defendants with violating 18 U.S.C. § 554.  (D.N. 73 PageID.468-69 ¶¶ 29-30 ("COUNT 9 (Smuggling Goods from the United States)"))  That statute prohibits "fraudulently or knowingly export[ing] or send[ing] from the United States, or attempt[ing] to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States."  § 554.  The Indictment alleges that the defendants exported or sent technical data in violation of the International Traffic in Arms Regulations (ITAR) and Arms

1

Export Control Act (AECA) by emailing magnet schematics to Chinese companies.[1] (D.N. 74, PageID.488-89 ¶¶ 29-30)

The defendants now move to dismiss Count Nine as legally insufficient, arguing that technical data transmitted digitally via email does not fall under the definition of "merchandise, article, or object." (D.N. 86, PageID.623)

## II.

"A party may raise an allegation that the indictment does not state an offense at any time." *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010). A motion to dismiss challenges the legal sufficiency of the indictment. *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Anderson*, 605 F.3d at 411 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Olive*, 804 F.3d 747, 753 (6th Cir. 2015) ("An indictment is sufficient if it contains the elements of the charged offense . . . . It must also be specific enough to allow him to plead an acquittal or conviction as a bar to future prosecutions for the same offense."). The defendants argue that the Second Superseding Indictment fails to state an element of the offense of smuggling in violation of § 554 because "according to the indictment, no 'merchandise, article, or object' was

---

[1] The defendants have filed several motions challenging their prosecution under ITAR and the AECA. (*See, e.g.*, D.N. 87; D.N. 88; D.N. 147) The alleged ITAR and AECA violations serve as the predicate offenses for the smuggling count. (*See* D.N. 73, PageID.469 ¶ 30 ("the defendants . . . did willfully, knowingly, and fraudulently . . . export and send technical data contained in the drawings attached to emails . . . from the United States, contrary to the ITAR and the AECA . . . a law and regulation of the United States.")) The motion to dismiss the smuggling counts, however, challenges the sufficiency of the indictment based on interpretation of the smuggling statute and does not rely on the outcome of the defendants' challenges to the underlying ITAR and AECA counts. (D.N. 86, PageID.622)

2

sent[;] [i]nstead, an email was sent." (D.N. 86, PageID.622)  Defendants reason that the plain meaning of "merchandise, article, or object" is a tangible item and that the term thus excludes digital information. (*Id.*)  The defendants also note the context of the anti-smuggling statute (*id.*, PageID.625-26) and urge the Court to resolve any ambiguity in their favor under the rule of lenity. (*Id.*, PageID.627-28)  The government responds that the defendants are attempting to read a tangibility element into § 554 that is not found in the statute's text and that the defendants "do not dispute that, had they instead printed the charged technical data and mailed it to China, or boarded a plane to China with that printout in their pocket, Section 554 would apply." (D.N. 108, PageID.1400)  In short, the government argues, the "fact that Defendants instead used the modern convenience of email does not immunize their conduct."[2] (*Id.*)  Both parties agreed at oral argument that this is the first prosecution under § 554 for sending digital information and that all previous prosecutions have involved physical goods. (D.N. 177, PageID.2405, 2410 ("The Government agrees with defendants.  We are unable to find a case that involves intangible."))  This prosecution and the defendants' motion therefore present an issue of first impression regarding the scope of § 554 that hinges on the interpretation of the terms "merchandise, article, or object."

When resolving a question of statutory interpretation, the Court looks first to the plain meaning of the disputed terms.  *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 177 (2004) ("The inquiry begins with the statutory text, and ends there as the text is unambiguous.").  In determining the plain meaning, however, courts "consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme . . . [because] [t]he meaning of statutory

---

[2] Although there may be policy arguments in favor of one interpretation of § 554 over another, the Court must resolve the dispute by interpreting the text of the statute.  *See Van Buren v. United States*, 593 U.S. 374, 381 (2021) ("Both Van Buren and the Government raise a host of policy arguments to support their respective interpretations. But we start where we always do: with the text of the statute.").

language, plain or not, depends on context." *United States v. Miller*, 734 F.3d 530, 540 (6th Cir. 2013).  If the plain meaning, understood in its statutory context, is unambiguous, the analysis stops there.  *See Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 618 (6th Cir. 2013) ("Where the text is plain and unambiguous, we must apply a statute according to its terms." (citing *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009))).  Only where the plain meaning is ambiguous may a court consider persuasive authority such as "'interpretations by other courts, legislative history, policy rationales, and the context in which the statute was passed' in interpreting a disputed term." *Tree of Life Christian Sch. v. City of Upper Arlington, Ohio*, 905 F.3d 357, 367 (6th Cir. 2018) (quoting *In re Carter*, 553 F.3d 979, 986 (6th Cir. 2009)).  The Court will therefore consider the plain meaning of the words "merchandise, article, or object" in isolation and then in their statutory context.

A.    **Plain-Text Interpretation**

In resolving the defendants' challenge to the scope of § 554, the Court must start with the plain language of the statute, as "it is axiomatic that the clearest evidence of congressional intent is the plain language of the statute itself."  *Id.*  The parties appear to agree that "merchandise" refers only to tangible items.  (D.N. 86, PageID.623 (noting that the customs statutes define merchandise as "goods, wares, and chattels," which the defendants argue "is broad enough to encompass virtually anything you can touch, but not things you cannot" (quoting 19 U.S.C. § 1401(c))); D.N. 108, PageID.1401-403 (contesting the defendants' interpretation of 'object' and 'articles' but not of 'merchandise'))  This interpretation is unambiguously accurate.  *See Merchandise*, *Black's Law Dictionary* (11th ed. 2019) ("In general, a movable object involved in trade or traffic; that which is passed from one person to another by purchase and sale.  2.  In particular, that which is dealt in by merchants; an article of trading or the class of objects in which

4

trade is carried on by physical transfer; collectively, mercantile goods, wares or commodities, or any subjects of regular trade, animate as well as inanimate. This definition generally excludes real estate, ships, intangibles such as software, and the like . . . ."); *Merchandise*, *American Heritage Dictionary of the English Language* (4th ed. 2000) ("Goods bought and sold in business; commercial wares."). The parties dispute, however, whether "object" and "article" refer only to tangible items.

The government concedes that the dictionary definition of "object" is "[a] specific, individual, material entity."[3] (D.N. 108, PageID.1401 (quoting *American Heritage Dictionary of the English Language*))  Other prominent dictionaries similarly define 'object' as meaning a material thing.  *See, e.g.*, *Object*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/object (April 2024) ("something material that may be perceived by the senses"); *Object*, *New Oxford American Dictionary* (3d ed. 2010) ("1. a material thing that can be seen and touched"); *Object*, *American Heritage Dictionary of the English Language* (4th ed. 2000) ("n. 1. Something perceptible by one or more of the senses, especially by vision or touch; a material thing."). The plain meaning of "object," therefore, is a *material* thing. As such, the term "object" in § 554 cannot refer to digital information communicated by email.

---

[3] The government nevertheless argues that "object" must include intangibles because some other statutes use the phrase "tangible object" and, the government asserts, the defendants' interpretation would render the word "tangible" surplusage in those acts. (D.N. 108, PageID.1401-402 (arguing against the definition of "object" as tangible based solely on the canon against surplusage))  Yet the Supreme Court has "several times affirmed that identical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute." *Yates v. United States*, 574 U.S. 528, 537 (2015); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). The Court will not disregard the plain meaning of "object" simply because applying that definition to unrelated statutes could create surplusage.

The only remaining route toward applying § 554 to an intangible item such as an email, then, is the word "article." Here, the government points to two definitions, both of which tend to show that an article must also be material. (D.N. 108, PageID.1404 ("*See also Oxford English Dictionary* ("article (n.), sense V.14.a - A particular material thing, esp. one belonging to a specified class; a commodity; an item of goods or property. Also occasionally used of an immaterial thing."); ARTICLE, Black's Law Dictionary (11th ed. 2019) (defining 'article' as '[g]enerally, a particular item or thing,' without reference to tangibility)").

Not only do these definitions indicate that an "article" is generally a material thing, but also the term "article" must be understood within the context of the phrase "merchandise, article, or object," applying the doctrine of *noscitur a sociis*. *See Yates,* 574 U.S. at 543 ("As explained in *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), we rely on the principle of *noscitur a sociis*—a word is known by the company it keeps—to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'"). Since "object" and "merchandise" refer to tangible items, § 554 is unlikely to present one of the "occasional[]" instances in which the term "article" is "used of an immaterial thing." *Article n. V.14.a.*, *Oxford English Dictionary*, https://www.oed.com/dictionary/article_n?tab=meaning_and_use#38462118 (March 2024); *see also Article*, *New Oxford American Dictionary* (3rd ed. 2010) ("1. A particular item or object, typically one of a specified type"); *Article*, *American Heritage Dictionary of the English Language* (4th ed. 2000) ("n. 1. An individual thing or element of a class; a particular object or item: *an article of clothing; articles of food*."). This interpretation is further supported by the principle of *ejusdem generis*, in which the scope of a broader term that follows a narrower term in a list is understood as cabined by the preceding, more specific term. *See, e.g.*, *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S.

6

246, 255 (2024) (holding that the petitioner's "argument gets ejusdem generis exactly backwards. It is the specific terms 'seamen' and 'railroad employees' that limit the residual clause, not the residual clause that swallows up these narrower terms. Only by deleting 'seamen' and 'railroad employees' from the statute could § 1 reach as far as Flowers imagines."). Since "merchandise" is a specific term that denotes a physical good, ware, or thing, as discussed above, it limits the scope of "article" rather than being subsumed by the broader term. *See id.*

Moreover, § 554 also punishes the "transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation." § 554. These references to transportation and concealment imply that the statute governs physical—rather than digital—acts. *See, e.g.*, *Transport*, New Oxford American Dictionary (3rd ed. 2010) ("1. take or carry (people or goods) from one place to another by means of a vehicle, aircraft, or ship"); *Transport*, American Heritage Dictionary of the English Language (4th ed. 2000) ("To carry from one place to another; convey.").

In sum, the plain language of § 554 indicates that the statute prohibits sending or exporting tangible items from the United States. Sending emails and email attachments, both of which are intangible, digital information, therefore falls outside of the scope of the plain meaning of the statute.[4]

---

[4] The analysis of whether "merchandise, article, or object" includes emails applies with equal force to email attachments. When asked by the Court at oral argument, the parties agreed that emails and email attachments were indistinguishable for the purposes of whether they were tangible or intangible and that the statute therefore either reaches both categories of digital information or neither. (D.N. 177, PageID.2406; *id.*, PageID.2409 ("The Government would submit, in general, going to your point that emails or attachments to emails is not the distinction here . . . .")) Although attachments may be more substantial than emails and contain greater amounts of data, the email attachments are nevertheless digital and intangible. *See Email*, New Oxford American Dictionary (3rd ed. 2010) ("messages distributed by electronic means from one computer user to one or more recipients via a network"); *Email*, American Heritage Dictionary of the English Language (4th ed. 2000) ("1. A system for sending and receiving messages electronically over a

7

The Court turns next to whether this plain-language interpretation comports with the statutory scheme in which § 554 was enacted. *See Yates*, 574 U.S. at 537 ("Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, '[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'"); *Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 869 (6th Cir. 2023) (considering whether the plain-language "understanding comports with the broader statutory scheme").

**B.   Statutory Context and Scheme**

"It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989)). In applying this canon, courts may consider how an interpretation of contested terms fits within the act of Congress that added the relevant section to the U.S. Code, including other sections created by the same act. *See Yates*, 574 U.S. at 541-42 ("The contemporaneous passage of § 1512(c)(1), which was contained in a section of the Sarbanes–Oxley Act discrete from the section embracing § 1519 and § 1520, is also instructive."); *Brown & Williamson*, 529 U.S. at 133 (considering the core objectives of the "FDCA as a whole" in interpreting the statute); *Babcock v. Comm'r of Soc. Sec.*, 959 F.3d 210, 216-17 (6th Cir. 2020) (construing the terms and scope of the uniformed-services exception within the context

---

computer network, as between personal computers. 2. A message or messages sent or received by such a system."); *Attachment*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/attachment (July 2024) ("6: a separate document or file that is included and sent with an electronic message (such as an email or text message)").

of the Social Security Act, concluding that "[t]he uniformed-services exception should be construed narrowly with respect to a CSRS pension in particular because the various provisions of the Social Security Act, taken together, make plain that the WEP is meant to apply to former federal employees receiving a CSRS pension").

The anti-smuggling statute at issue in this case, 18 U.S.C. § 554, was created by the Reducing Crime and Terrorism at America's Seaports Act of 2005.[5]  Pub. L. No. 109-177, §§ 301-11, 120 Stat. 233-242.  The Court must therefore consider whether construing "merchandise, article, or object" to cover only physical goods comports with the statutory scheme of that Act, and whether the contrary interpretation advanced by the United States conflicts with the overall statutory scheme.  *See Yates*, 574 U.S. at 541-42; *Babcock*, 959 F.3d at 216-17.  As an initial matter, it is unlikely that Congress would have intended a provision of an Act addressing America's seaports to prohibit email communications, absent language clearly communicating that intent.  *See Brown & Williamson*, 529 U.S. at 133.  More relevant, however, is the subsection in which Congress enacted § 554.

Congress added the anti-smuggling statute at issue in this case as part of § 311 of the Act, also entitled "Smuggling Goods from the United States."  Each of the other provisions of § 311 reinforces the plain-meaning interpretation of the terms "merchandise, article, or object" as referring to physical items, because they make clear that § 311 as a whole was concerned with the treatment, and smuggling, of "goods" or "merchandise."  For example, § 311(c) added § 554 as a

---

[5] The other provisions of the Act appear to similarly address physical risks to ships and at ports. *See, e.g.*, Pub. L. No. 109-177, § 302 (Entry by false pretenses to any seaport); Pub. L. No. 109-177, § 303 (Criminal sanctions for failure to heave to, obstruction of boarding, or providing false information); Pub. L. No. 109-177, § 305 (Transportation of dangerous materials and terrorists); Pub. L. No. 109-177, § 308 (Stowaways on vessels or aircraft).  It is difficult to conclude that Congress intended one of these statutes to criminalize sending emails to foreign recipients, without clear language indicating that intent.

specified unlawful activity for money-laundering offenses, 18 U.S.C. § 1956(c)(7)(D), with the description "relating to smuggling goods from the United States." Pub. L. No. 109-177, § 311(c), 120 Stat. 242. Similarly, § 311(d) amended the Tariff Act of 1990 to add to § 596 that "merchandise exported or sent from the United States or attempted to be exported or sent from the United States contrary to law . . . shall be seized and forfeited to the United States." Pub. L. No. 109-177, § 311(d), 120 Stat. 242. And § 311(e) increased penalties for removing goods from customs custody. Pub. L. No. 109-177, § 311(d), 120 Stat. 242.

As discussed above, the parties appear to agree that "merchandise" unambiguously refers to physical items. (*See* D.N. 86, PageID.623; D.N. 108, PageID.1401-403) "Goods" similarly means physical property, in particular property that is movable. *See Good*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/goods (July 2024) ("2: an item of tangible movable personal property having value but usually excluding money, securities, and negotiable instruments"); *Good*, *New Oxford American Dictionary* (3rd ed. 2010) ("3. (goods) merchandise or possessions"); *Good*, *American Heritage Dictionary of the English Language* (4th ed. 2000) ("4. Goods a. Commodities; wares: *frozen goods*. B. Portable personal property."). The words "merchandise, object, or article" in § 554, understood in the context of the § 311 statutory scheme that is concerned with the treatment of goods and merchandise exported from the United States and was enacted as part of the Reducing Crime and Terrorism at America's Seaports Act of 2005, pertain only to physical items that would qualify as goods or merchandise. *See Yates*, 574 U.S. at 541-42; *Babcock*, 959 F.3d at 216-17. The statutory scheme thus supports the plain-language interpretation reached above. *See Yates*, 574 U.S. at 541-42.

10

### C.     Additional Tools of Statutory Construction

Although the plain meaning of the statutory terms—understood in the context of the statutory scheme—guides the Court's analysis, the conclusion that "merchandise, object, or article" refers only to physical items is supported by additional tools of statutory construction. Case law instructs courts to consider, among other factors, a statute's caption, its placement in the U.S. Code, and related provisions in the Code when determining the meaning of disputed terms.[6] *See Yates*, 574 U.S. 539-40; *Boumediene v. Bush*, 553 U.S. 723, 776 (2008). Each of these interpretive aids favors the plain meaning of "merchandise, object, or article" as a physical item and not digital information sent to a foreign recipient via email.

First, the caption of § 554 is "Smuggling Goods from the United States." § 554. A statute's title and caption are enacted by Congress and are useful tools in determining Congress's intent and resolving ambiguities in the statute's terms. *See Yates*, 574 U.S. at 539 ("Familiar interpretive guides aid our construction of the words "tangible object" as they appear in § 1519. We note first § 1519's caption . . . . That heading conveys no suggestion that the section prohibits spoliation of any and all physical evidence, however remote from records."); *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("We also note that 'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute."); *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (holding that courts may refer to

---

[6] The United States casts these interpretive tools as "legislative history" that can only be considered if the plain meaning of the text is ambiguous. (D.N. 108, PageID.1404) Unlike legislative history, however, a statute's caption and placement in the U.S. Code are enacted by Congress and are not susceptible to manipulation by individual legislators seeking to skew the interpretation of a statute. *See Hueso v. Barnhart*, 948 F.3d 324, 335 (6th Cir. 2020) (noting that an interpretive source that has been enacted by Congress such as "statutory history, unlike legislative history, itself reflects the constitutional bicameralism and presentment process and thus is vastly more difficult to manipulate than legislative history").

a statute's title "when [it] shed[s] light on some ambiguous word or phrase." (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947))). As noted above, the plain meaning of "goods" is physical, movable property. *See Good*, *New Oxford American Dictionary* (3rd ed. 2010). Moreover, the verb "smuggling" indicates the physical transport of goods. *See Smuggle*, *New Oxford American Dictionary* (3rd ed. 2010) ("move (goods) illegally into or out of a country"); *Smuggle*, *American Heritage Dictionary of the English Language* (4th ed. 2000) ("1. To import or export without paying lawful customs charges or duties. 2. To bring in or take out illicitly or by stealth."). In short, the caption's use of "smuggling goods" indicates that Congress intended § 554 to regulate the illegal transport of physical items and limits the potential scope of "merchandise, article, or object" to a good that may be smuggled. *See Yates*, 574 U.S. at 539.

The fact that Congress decided to place § 554 in Chapter 27 of the U.S. Code similarly reinforces the conclusion that the statute prohibits sending physical items from the United States in violation of another law or regulation, not transmitting intangible information to a foreign recipient over the internet. *See* Pub. L. No. 109-177, § 311(a), 120 Stat. 242 ("SEC. 311 SMUGGLING GOODS FROM THE UNITED STATES. (a) IN GENERAL.—Chapter 27 of title 18, United States Code, is amended by adding at the end the following: '§ 554. Smuggling goods from the United States.'"); *Yates*, 574 U.S. at 540 ("Section 1519's position within Chapter 73 of Title 18 further signals that § 1519 was not intended to serve as across-the-board ban on the destruction of physical evidence of every kind."). First, the chapter's title, "CUSTOMS," indicates that the statutes within the chapter pertain to offenses related to the flow of goods into or out of the country. *See Customs*, *Black's Law Dictionary* (12th ed. 2024) ("A government bureau that examines goods presented for entry into the country and collects taxes due on them."); *Customs*, *New Oxford American Dictionary* (3rd ed. 2010) ("the official department that administers and

12

collects the duties levied by a government on imported goods" or "the duties levied by a government on imported goods"); *Customs*, *American Heritage Dictionary of the English Language* (4th ed. 2000) ("The procedure for inspecting goods and baggage entering a country.").

Second, the other statutes within the chapter govern the transport of goods or prohibit actions taken to evade customs duties.[7] *See, e.g.*, 18 U.S.C. § 541 (Entry of goods falsely classified); § 542 (Entry of goods by means of false statements); § 543 (Entry of goods for less than legal duty); § 544 (Relanding of goods); § 545 (Smuggling goods into the United States); § 546 (Smuggling goods into foreign countries); § 547 (Depositing goods in buildings on boundaries); § 548 (Removing or repacking goods in warehouses); § 549 (Removing goods from customs custody; breaking seals); § 553 (Importation or exportation of stolen motor vehicles, off-highway mobile equipment, vessels, or aircraft); § 555 (Border tunnels and passages). The United States cites one of these "sister statutes" in particular as shedding light on the meaning of "merchandise, article, or object": § 545, "Smuggling goods into the United States." (*See* D.N. 108, PageID.1400 (citing seven cases prosecuting individuals for smuggling physical goods into the United States under § 545)) But § 545 prohibits the unlawful importation of "merchandise"—a term the government concedes refers to tangible items—and further describes the merchandise as "such goods." § 545. Similarly, the statute governing smuggling goods into foreign countries, § 546, applies only to any "person owning in whole or in part any vessel of the United States who

---

[7] The government urges the Court to look to AECA and ITAR to define "article" based on the use of the term "defense articles" in the USML. (D.N. 108, PageID.1402-403) But AECA and ITAR only provide the "in violation of any law or regulation of the United States" element of the § 554 charge, an element that by its terms may be satisfied by *any* statute or regulation. (D.N. 73, PageID.469 ¶ 30) AECA and ITAR are therefore not part of a "symmetrical and coherent regulatory scheme" with § 554, contrary to the government's assertion. (D.N. 108, PageID.1399 (quoting *Brown & Williamson Tobacco Corp.*, 529 U.S. at 133)) The proper statutory context, and the one that the Court considers, is the Act in which Congress created § 554 and the sister statutes found in the same chapter of the U.S. Code. *See Yates*, 574 U.S. 539-40.

13

employs, or participates in, or allows the employment of, such vessel for the purpose of smuggling." § 546. The fact that Congress chose to place § 554 amid these statutes reinforces the conclusion that Congress also intended § 554 to govern sending physical goods and did not intend § 554 to restrict electronic communications with foreign recipients.[8] *See Yates*, 574 U.S. at 540 (noting that the placement of the provision next to statutes prohibiting obstructive acts in specific contexts indicated that Congress intended the provision to similarly apply only in particular contexts, not to prohibit destruction of any and all physical evidence).

In sum, the plain meaning of the terms "merchandise, article, or object," bolstered by their statutory context, does not include digital information sent via email.[9] And because the Second

---

[8] This conclusion is further supported by the existence and language of other statutes that criminalize the electronic transmission of information related to national security, each placed within Chapter 37, entitled "ESPIONAGE AND CENSORSHIP." *See* 18 U.S.C. § 793(d) ("Whoever, lawfully having possession of, access to, control over, or being entrusted with any document . . . blueprint, plan . . . or note relating to the national defense, or information relating to the national defense . . . willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted . . . the same to any person not entitled to receive it" shall be imprisoned for not more then ten years); 18 U.S.C. § 798 ("'Whoever knowingly and willfully communicates, furnishes, transmits, or otherwise makes available to an unauthorized person, or publishes, or uses in any manner prejudicial to the safety or interest of the United States or for the benefit of any foreign government to the detriment of the United States any classified information" related to communication intelligence shall be imprisoned for not more than ten years). The language used by these statutes, particularly "communicates" and "transmits," clearly and unambiguously expresses Congress's intent to regulate the transfer of intangible information.

[9] Even if there were lingering ambiguity to support the government's position that "merchandise, article, or object" includes intangibles, when "standard principles of statutory interpretation 'fail to establish that the Government's position is unambiguously correct[,] [courts] apply the rule of lenity and resolve the ambiguity in [the criminal defendant's] favor.'" *Hardin v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 65 F.4th 895, 901 (6th Cir. 2023). Thus, where there are "two rational readings of [the] criminal statute, one harsher than the other, the rule of lenity tells [courts] that [they] are to choose the harsher only when Congress has spoken in clear and definite language." *United States v. Miller*, 734 F.3d 530, 542 (6th Cir. 2013). "'In sum, it is not enough to conclude that a criminal statute should cover a particular act[:] [t]he statute must clearly and unambiguously cover the act.'" *Hardin*, 65 F.4th at 901 (quoting *Cargill v. Garland*, 57 F.4th 447, 473 (5th Cir. 2023) (en banc) (Ho, J., concurring)). The rule of lenity therefore also supports the Court's interpretation of "merchandise, article, or object" as reaching only tangible items and excluding digital information.

Superseding Indictment does not allege that the defendants sent physical items from the United States in violation of any law or regulation of the United States (D.N. 73, PageID.468-69 ¶¶ 29-30), the Indictment fails to state an offense of smuggling in violation of § 554 against any of the defendants as a matter of law.[10] *See Anderson*, 605 F.3d at 411 (holding that to be legally sufficient, a charge must allege each element of the offense).

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that the motion to dismiss the smuggling count as legally insufficient (D.N. 86) is **GRANTED**. Count 9 of the Second Superseding Indictment is hereby **DISMISSED** as to all Defendants in this matter.

The Court anticipates setting a status conference by subsequent Order.

July 23, 2024

David J. Hale, Judge
United States District Court

---

[10] The question before the Court is the meaning and scope of the anti-smuggling statute and whether the statute covers the defendants' conduct, not whether it *should* cover their conduct. The role of the courts is to give effect to the language of the statute; it is up to Congress to expand or modernize statutes in the face of technological advances. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (declining to adopt a litigant's broader interpretation of the disputed statutory term because the "argument would result 'not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope.'"); *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com*, 590 F.3d 381, 388 (6th Cir. 2009) (rejecting the invitation to expand the scope of the statute, holding that "the Kentucky General Assembly, not the court, is the proper entity to close any such potential loophole.").