UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,     Plaintiff,

v.     Criminal Action No. 3:22-cr-88-DJH

PHIL PASCOE (1),
SCOTT TUBBS (2),
MONICA PASCOE (3), and
QUADRANT MAGNETICS, LLC (4),     Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendants Phil Pascoe, Scott Tubbs, Monica Pascoe, and Quadrant Magnetics, LLC, move to exclude portions of expected prosecution expert testimony, arguing that the experts would repeat the testimony of absent witnesses in violation of the Confrontation Clause. (Docket No. 144) The government opposes the motion. (D.N. 161) After careful consideration, the Court will grant the motion in part for the reasons set out below.

**I.**

The Second Superseding Indictment alleges that the defendants exported "approximately 70 drawings containing export-controlled technical data to Chinese Company 1 without a license as required by law and in violation of the law, specifically the International Traffic in Arms Regulations ("ITAR")."[1] (D.N. 73, PageID.455, ¶ 6) The government provided expert disclosures from Alex Douville (D.N. 144-1; D.N. 144-2) and Steven Burton (D.N. 144-3; D.N. 144-4) summarizing expected testimony about the ITAR-controlled status of the technical data. Some of this expected testimony refers to commodity-jurisdiction determinations (CJDs) prepared by the

---

[1] The Court discussed the relevant regulatory scheme in detail in an earlier Order. (*See* D.N. 185)

1

State Department's Directorate of Defense Trade Controls (DDTC).  (D.N. 144-1, PageID.2004-2005; D.N. 144-2, PageID.2010; D.N. 144-3, PageID.2014)  The defendants now move to exclude those portions of the expected testimony unless the officers who prepared the CJDs testify at trial, arguing that allowing the experts to rely on the CJDs without affording the defendants the opportunity to cross-examine the officers about how they reached the conclusion that the data was export-controlled violates the defendants' right to confront the witnesses against them under the Sixth Amendment.  (D.N. 144)

## II.

"The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'"  *Crawford v. Washington*, 541 U.S. 36, 42 (2004).  To enforce this constitutional guarantee, courts must exclude testimonial statements by out-of-court witnesses unless the witness is unavailable and the defendant had a prior opportunity to cross-examine them.  *See id.* at 59.  Testimonial statements are "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009).   Where the prosecution seeks to offer in-court expert testimony that is based on the expert's review of out-of-court testimony, the out-of-court statements are offered for their truth and the expert's testimony must be excluded.  *See Smith v. Arizona*, 144 S. Ct. 1785, 1800-01 (2024).

### A.

The defendants urge the Court to exclude those portions of the expected testimony of prosecution experts Alex Douville and Steven Burton that rely upon, and repeat the conclusions of, CJDs prepared by DDTC officers if those officers are not called to testify at trial.  (D.N. 144,

PageID.1988-91, 1995-96) According to the defendants, the CJDs are testimonial because they are formal written statements by the Department of State that were prepared at the request of Special Agent Michael Zanghi of Homeland Security Investigations (HSI).[2] (*Id.*, PageID.1989-91) The Court agrees. CJDs are formal written opinions by the Department of State which, according to the ITAR, have the power to remove potential defense articles from the U.S. Munitions List. *See* 22 C.F.R. § 120.3(c) ("A specific article or service is not a defense article or defense service for purposes of this subchapter if it: (1) Is determined to be under the jurisdiction of another department or agency of the U.S. Government (see § 120.5) pursuant to a commodity jurisdiction determination . . . ."); 22 C.F.R. § 120.4(a) ("The commodity jurisdiction procedure is used with the U.S. Government if doubt exists as to whether an article or service is covered by the U.S. Munitions List (USML). It may also be used for consideration of a redesignation of an article or service currently covered by the USML."). The CJDs are therefore sufficiently solemn, formal statements by government officials to implicate the defendants' Confrontation rights. *See, e.g., United States v. Sandles*, 469 F.3d 508, 515 (6th Cir. 2006) (holding that allowing the prosecution to introduce a written statement by a Federal Deposit Insurance Corporation (FDIC) officer that the bank victim was FDIC-insured violated the defendant's Confrontation Clause rights and constituted plain error); *cf. United States v. Miller*, 982 F.3d 412, 437 (6th Cir. 2020) (holding that a report by a National Center for Missing and Exploited Children analyst was not testimonial because the analyst did not sign the report or certify to its accuracy, and in fact included a disclaimer that the report might be inaccurate). To the extent that a CJD was prepared at the request

---

[2] The motion only challenges the admissibility of CJDs, and expert testimony based on those CJDs, prepared at the request of HSI as part of the criminal investigation of the defendants' conduct. (D.N. 144, PageID.1990-91) The Court therefore does not reach the issue of whether CJDs completed at the request of General Dynamics or other third parties are testimonial.

of HSI, such that the DDTC officer preparing the report was on notice that the CJD was part of an ongoing criminal investigation, that CJD was prepared under circumstances that would lead an objective witness to reasonably believe that the CJD would be available for use at a later trial. *See Melendez-Diaz*, 557 U.S. at 310.  As such, any CJDs prepared on behalf of HSI in this matter are testimonial and may only be admitted if the officer who prepared the CJD is called to testify at trial or upon a showing that the officer is unavailable to testify and the defendants have had a prior opportunity to confront them. *See id.*  Expert testimony that relies upon or repeats the findings of those CJDs must similarly be excluded absent in-court testimony and cross-examination of the preparing officers or the requisite showings of unavailability and prior confrontation. *See Smith*, 144 S. Ct. at 1800-01.

**B.**

The government raises several arguments in support of its proposition that the CJDs are nontestimonial, each of which is precluded by established case law.  The prosecution's primary argument in favor of admitting the CJDs and related expert testimony is that the CJDs are business records.  (D.N. 161, PageID.2233)  But the Supreme Court rejected this argument in *Melendez-Diaz*, explaining that although "[d]ocuments kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status[,] . . . . that is not the case if the regularly conducted business activity is the production of evidence for use at trial." 557 U.S. at 322.  Business records that avoid implicating the Confrontation Clause do so because they "hav[e] been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Id.* at 324.  This case does not present an instance in which the DDTC generated the CJDs as part of its normal operation, independent of any investigation, and those records happened to become relevant to a criminal investigation after the fact.  Rather, they were created to aid in a

criminal investigation. (*See* D.N. 144-5; D.N. 144-6 ("This CJ application by Homeland Security is for determining jurisdiction and controls for ten magnets as part of an ongoing investigation.")) That is the very definition of "testimonial." *See Melendez-Diaz*, 557 U.S. at 310.

The government next argues that the CJDs are nontestimonial because DDTC would have conducted the same evaluation whether the request was by law enforcement—as it was in this case—or by a private party. (D.N. 161, PageID.2233-34) It cites no case law in support of this argument, which contradicts Supreme Court precedent holding that laboratory analysis is testimonial. The prosecution argued in those cases that the laboratory reports were nontestimonial because they merely reported the conclusions of "neutral, scientific testing." *Melendez-Diaz*, 557 U.S. at 317-20; *see also Bullcoming v. New Mexico*, 564 U.S. 647, 659-60 (2011) (reversing the state court's conclusion that a laboratory report was nontestimonial because it was based on the output of a gas chromatograph machine, holding that "[m]ost witnesses, after all, testify to their observations of factual conditions or events" but that their testimony nevertheless implicates the Confrontation Clause). But the Court held in those cases that when testing was conducted to establish a fact in aid of a prosecution, the report is testimonial. *Bullcoming*, 564 U.S. at 659-60; *Melendez-Diaz*, 557 U.S. at 317-20. Here, as in the laboratory-report cases, the relevant question is whether the reports or CJDs were prepared under circumstances that would lead the drafter to believe that they would be available for use at a later trial, not whether the drafter engaged in different analysis based on that knowledge. *See id.*

Finally, the government cites two earlier prosecutions in which courts admitted DDTC certifications without requiring the managing director of the DDTC, who had signed the certifications, to testify. (D.N. 161, PageID.2234 (citing *United States v. Roth*, 2009 WL 1748748, at *2 (E.D. Tenn. June 19, 2009); *United States v. Piquet*, 372 F. App'x 42, 46 (11th Cir. 2010)))

5

In *Roth*, however, the evidence at trial "included testimony from Jesse Crump, the Department of Defense employee who recommended that the State Department conclude that the data and other items were defense articles[;] the testimony of Anthony Dearth of the Department of State[;] and Government Exhibits 46A and 46B." 2009 WL 1748748, at *3 (E.D. Tenn. June 19, 2009). So while the *Roth* court admitted the certification by the managing director of the DDTC without requiring the director to testify, the prosecution called the State Department employees who were responsible for reaching the conclusion that the items were ITAR-controlled as witnesses at trial. *See id.* The government similarly overlooks testimony by the officers responsible for the determination of ITAR control in *Piquet*. *See* 372 F. App'x at 46 ("Bruce Charles Schwingler, division chief of DOS' Directorate of Defense Trade Controls, testified that a 'technical review' by the Department of Defense indicated that the APH–502 was a defense article and that Kovac's certification was generated by his office."). In *Piquet* and *Roth*, the courts did not require the Managing Director who signed off on the final report to testify, but admitted the report only with the testimony of those responsible for preparing it. *See Piquet*, 372 F. App'x at 46; *Roth*, 2009 WL 1748748, at *3. That is what the defense urges the Court to require here. (D.N. 144, PageID.1993)

### C.

In *Melendez-Diaz*, the Supreme Court highlighted the importance of confrontation through cross-examination of analysts, pointing out that without confrontation "[a]t the time of trial, petitioner did not know what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed." 557 U.S. at 320. The same is true here: Unless the government calls the officers who prepared the CJDs to testify, the defendants—and ultimately, the jury—will have no basis for knowing how the officers reached the conclusion that the magnets and associated

schematics were ITAR-controlled. (*See* D.N. 144-5 (informing HSI that several magnet drawings were ITAR-controlled without describing the basis for that conclusion)) The Confrontation Clause guarantees the defendants the right to cross-examine the DDTC officers who prepared the CJDs to test the basis of their conclusions. *See Melendez-Diaz*, 557 U.S. at 311.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that the motion to exclude portions of expected testimony of Alex Douville and Steven Burton (D.N. 144) is **GRANTED** in part. The Court will exclude any testimony offered at trial that is premised upon CJDs issued at the request of Homeland Security Investigations if the officers who prepared the CJDs are not also called as witnesses and subject to cross-examination.

July 31, 2024

David J. Hale, Judge
United States District Court