UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                                                 Plaintiff,

v.                                                               Criminal Action No. 3:22-cr-88-DJH

PHIL PASCOE (1),
SCOTT TUBBS (2),
MONICA PASCOE (3), and
QUADRANT MAGNETICS, LLC (4),                                                          Defendants.

\* \* \* \* \*

## MEMORANDUM AND ORDER

Defendants Phil Pascoe, Scott Tubbs, Monica Pascoe, and Quadrant Magnetics, LLC, move to exclude the State Department's Commodity Jurisdiction Determinations (CJDs) and Technical Data Certification Forms (TDCFs) as inadmissible lay opinion testimony, hearsay, and misleading. (Docket No. 90) The United States opposes the motion. (D.N. 110) After careful consideration, the Court will deny the defendants' motion for the reasons set out below.[1]

**I.    BACKGROUND**

The Arms Export Control Act (AECA) and its implementing regulations, the International Traffic in Arms Regulations (ITAR), require individuals and businesses to obtain export licenses before exporting defense articles listed on the United States Munitions List

---

[1] Additionally, non-party GE Aviation moves to intervene in this matter for the limited purpose of filing a motion to quash Quadrant's Rule 17(c) subpoena duces tecum. (D.N. 43) GE Aviation also moves to seal its motion to intervene (*id.*; *see also* D.N. 44), as well as its reply. (D.N. 47; D.N. 48) The Court previously denied Quadrant's motion for issuance of Rule 17(c) subpoenas. (D.N. 62) GE Aviation's motion to intervene will therefore be denied as moot, and the Court will grant GE Aviation's requests to file under seal in light of the good cause shown. (D.N. 43; D.N. 47) Finally, both Defendants and the government move without objection to file certain items under seal.  Defendants move to seal their motion to exclude expert testimony (D.N. 92; *see* D.N. 93), and the government moves to seal Docket No. 134-3. (D.N. 146) The Court finds good cause to seal those items and will therefore grant both motions.

(USML), including technical data related to defense articles.[2]  22 U.S.C. § 2778(b)(2); 22 C.F.R. §§ 120.1, 120.17, 121.1.  The CJD process exists to clarify "doubt . . . as to whether an article or service is covered by the [USML]."  22 C.F.R. §§ 120.4.  Individuals can submit CJD requests to the Directorate of Defense Trade Controls (DDTC) for determination of whether a particular item is covered by the USML and therefore subject to ITAR's export controls.  *See id.*  The DDTC makes this determination in consultation with other federal agencies and industry partners.  *See* 22 C.F.R. § 120.12.

The Second Superseding Indictment alleges that the defendants exported "approximately 70 drawings containing export-controlled technical data" to China without a license as required by ITAR.[3]  (D.N. 73, PageID.455 ¶ 6)  Two DDTC officials, Richard W. Koelling, Jr., and Sarah J. Heidema, issued CJDs in 2021 for two of the drawings allegedly exported by Defendants.  (D.N. 90-2, PageID.1034–37)   Koelling and Heidema concluded that the drawings were designated on the USML, and therefore subject to ITAR's export controls, from at least January 1, 2009, to summer 2021.  (*Id.*)  In reaching those conclusions, Koelling and Heidema reviewed TDCFs prepared by Dennis Miller, the Senior Manager of Regulatory Compliance for General Dynamics Ordnance and Tactical Systems, Inc.[4]  (D.N. 90-1, PageID.1029–32)

---

[2] Although many items are explicitly designated as ITAR-controlled on the USML, *see, e.g.*, 22 C.F.R. § 121.1 Category I(a), the USML also lists "[p]arts, components, accessories, and attachments specially designed" for military equipment.  *See, e.g.*, 22 C.F.R. § 121.1 Category VIII(h)(1).  If parts are specially designed for use in defense articles listed on the USML, then they are also ITAR-controlled.  *See* 22 C.F.R. § 120.41.

[3] Defendants are also charged with conspiracy and wire fraud arising from these exports and related conduct.  (D.N. 73, PageID.458–65 ¶¶ 15–20).  The Second Superseding Indictment also originally charged Defendants with conspiring to violate and violating the law against smuggling goods from the United States.  (*Id.*, PageID.458–69 ¶¶ 16(b), 29–30)  By previous Order, the Court dismissed the smuggling allegations in the Second Superseding Indictment.  (D.N. 186)  Therefore, those charges are no longer applicable.

[4] The TDCFs attached to the present motion contain the following information: the name of the program for which the drawings were produced, whether the drawings contained technical data

Defendants now move to exclude the CJDs and TDCFs, contending that the CJDs are inadmissible lay opinion testimony, hearsay, and misleading and that the TCDFs are inadmissible lay opinion testimony and hearsay. (D.N. 90) The Court addresses each argument below.

## II.   ANALYSIS

### A.   Lay Opinion Testimony

Defendants argue that the CJDs and TDCFs must be excluded because the individuals who authored them—Koelling, Heidema, and Miller—lacked personal knowledge of their contents. (*Id.*, PageID.1018–21) Defendants claim that Koelling, Heidema, and Miller reached the conclusions expressed in the CJDs and TCDFs based entirely on the representations of unnamed General Dynamics employees, rather than on their own personal observations. (*Id.*) According to Defendants, the CJDs and TDCFs must therefore be excluded as impermissible lay opinion testimony.[5] (*Id.*, PageID.1021–22)

Under the Federal Rules of Evidence, "[a] witness may testify based on opinion, as opposed to testifying to facts of which he has direct knowledge, under two circumstances: as a lay person under Rule 701 or as an expert under Rule 702." *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013). If an opinion is proffered by a lay witness, the opinion must be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

---

subject to ITAR, whether the drawings were produced for military programs, whether the drawings were unique, and whether the drawings had civilian applications. (D.N. 90-1, PageID.1029–32)

[5] Defendants assert that the government has not designated Koelling, Heidema, and Miller as expert witnesses. (D.N. 90, PageID.1020)

The United States ultimately bears the burden of establishing the personal knowledge of its witnesses. *See* Fed. R. Evid. 602 (explaining that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). And any opinion offered by the government's lay witnesses must satisfy the requirements of Rule 701. *See* Fed. R. Evid. 701. Moreover, even if Koelling, Heidema, and Miller do not testify at trial, the government may still have to demonstrate that those individuals had the requisite personal knowledge to support admission of the CJDs and TCDFs.[6] *See Alexander*, 576 F.3d at 562 ("[A]s a general rule, a hearsay 'declarant is, of course, a witness, and neither [Rule 803] nor Rule 804 dispenses with the requirement of firsthand knowledge.'" (quoting Advisory Committee's Note to 1972 Proposed Rules, Fed. R. Evid. 803)); *see also United States v. Lanci*, 669 F.2d 391, 395 (6th Cir. 1982).

In any event, however, the government correctly notes that Defendants base their arguments "on unsupported assumptions about who [the government's] witnesses will be and what they will say." (D.N. 110, PageID.1429) Indeed, although the defendants "assume that [Koelling and Heidema] simply signed the CJDs immediately upon receiving an application" (*id.*), the record is devoid of any evidence suggesting that this assumption is correct.[7] Similarly, the record does not contain any evidence that Miller lacked personal knowledge of the information in the TDCFs. Defendants' objections are thus premature. It remains unknown what evidence will be presented at trial regarding the CJD process and how or whether the

---

[6] Not all hearsay statements must satisfy the personal-knowledge requirement. For example, "the personal knowledge requirement does not extend to official reports admissible under Rule 803(8)." *Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009*)* (citing *Combs v. Wilkinson*, 315 F.3d 548, 555–56 (6th Cir. 2002)).

[7] In fact, the regulations creating the CJD process indicate that Koelling and Heidema's review necessarily required a more thorough investigation than suggested by Defendants. *See* 22 C.F.R. § 120.12 (explaining that the CJD process "entails consultation among the Departments of State, Defense, Commerce, and other U.S. Government agencies and industry in appropriate cases").

United States intends to introduce the CJDs or TDCFs. The Court will therefore defer a ruling on this issue so that it may be resolved in its proper context. *See Anderson v. United States*, No. 120CV00157GNSHBB, 2023 WL 171776, at *1 (W.D. Ky. Jan. 12, 2023) ("Absent evidence [that] is patently inadmissible for any purpose, courts may defer issues until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." (internal quotations and citations omitted) (alteration in original)).

### B.    Hearsay

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801. Hearsay is generally inadmissible and may only be introduced if it falls within a hearsay exception or exclusion. Fed. R. Evid. 802. When evidence contains multiple levels of hearsay, it is inadmissible unless each separate statement falls within a hearsay exception or exclusion. *Back v. Nestle USA, Inc.*, 694 F.3d 571, 578 (6th Cir. 2012); Fed. R. Evid. 805.

Defendants contend that the CJDs will be offered for the truth of the matter asserted—namely, "that the drawings of the General Dynamics magnets are technical data designated on the USML"—and do not fit within a hearsay exception.[8] (D.N. 90, PageID.1022) Defendants also argue that the TDCFs are inadmissible hearsay.[9] (*Id.*) The government responds that

---

[8] Defendants also repeat their assertion that the CJDs and TDCFs lack the necessary personal knowledge to be admissible at trial. (D.N. 90, PageID.1022) For the reasons already stated, the Court defers any ruling on that issue until trial. *See Anderson*, 2023 WL 171776, at *1.

[9] In addition, the defendants assert that all CJDs and TDCFs must be categorically excluded unless the individuals who created them testify at trial pursuant to the Confrontation Clause. (D.N. 90, PageID.1022) For the reasons previously stated in the Court's July 31 Memorandum and Order, the Court reiterates that it will exclude "any testimony offered at trial that is premised upon CJDs issued at the request of Homeland Security Investigations if the officers who prepared the CJDs are not also called as witnesses and subject to cross-examination." (D.N. 188, PageID.2529) But until the Court receives further information about the CJD process, any further ruling would be premature. *See Anderson*, 2023 WL 171776, at *1; *see also United States v. Moore*, No. 1:23-CR-47, 2024 WL 3324817, at *16 (S.D. Ohio July 2, 2024) ("[W]hile there might be hearsay and Confrontation Clause concerns about [this evidence] . . . [it] may be

categorical exclusion is improper because "Defendants have not shown that every CJD the government might seek to admit would be offered for the truth of the matter asserted" (D.N. 110, PageID.1430), and that in any event, the CJDs fit within the hearsay exceptions for public records and records of a regularly conducted activity. (*Id.*, PageID.1428)

The Court agrees with the United States that any ruling on this issue should be deferred until trial. *See Anderson*, 2023 WL 171776, at *1 (explaining that pretrial motions to exclude should only be granted when the evidence "has no legitimate use at trial for any purpose"). At trial, the government will offer evidence to "explain the CJD process . . . both in general and as it applied to the . . . CJDs that defendants seek to exclude." (D.N. 110, PageID.1429) This information will allow the Court to determine whether the CJDs or TDCFs fall within a hearsay exception.[10] Similarly, by waiting until trial, the Court will know exactly which documents the government seeks to admit and for what purpose.[11] The Court will therefore defer until trial any hearsay ruling regarding the CJDs and TDCFs.

C.   **Rule 403**

Finally, Defendants urge the Court to exclude the CJDs pursuant to Federal Rule of Evidence 403 on the ground that they offer limited probative value and risk misleading the jury. (D.N. 90, PageID.1023–24) According to the defendants, the CJDs have minimal probative

---

admissible depending on the purpose for which the government proffers [it] . . . . [and] that means the Court cannot make that determination until trial.").

[10] Defendants' arguments regarding whether the CJDs and TDCFs qualify as public records or business records rely on assumptions about how and under what circumstances those documents were generated. (*See, e.g.*, D.N. 118, PageID.1566, 1568) Without further information, the Court cannot conclude that the defendants' factual assumptions are correct.

[11] Some of the relevant CJDs were created in response to submissions by third parties, while others were requested as part of the government's investigation. (*See* D.N. 110, PageID.1430–32; *see also* D.N. 188, PageID.2526–27) As discussed in the Court's July 31, 2024 Memorandum and Order, this distinction may influence the hearsay analysis. (*See* D.N. 188, PageID.2526–27)

value because they merely represent the DDTC's "ex-post" conclusions that certain technical data was designated on the USML. (D.N. 90, PageID.1023–24) Defendants argue that "the government cannot decide for itself, three years after the alleged exports, that [Defendants'] conduct violated ITAR as a matter of law" and that "the jury should not consider [the CJDs] as part of the relevant evidence relating to the ITAR charges in the indictment."[12] (*Id.*, PageID.1024) Defendants further assert that "even if the CJDs are treated merely as evidence rather than binding determinations . . . [they] have the potential to confuse and mislead a jury because they are pronouncements by a government agency that would still appear to have the force of law." (*Id.*) The United States responds that any prejudice can be mitigated with a limiting instruction "that the CJDs are not dispositive of the question the jury must resolve." (*Id.*, PageID.1430 n.6)

The Court agrees with the government that any potential prejudice caused by the admission of the CJDs can be cured by a limiting instruction explaining that they are not to be treated as dispositive. *See, e.g.*, *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006) (noting that limiting instructions can cure potential prejudice); *Thompson v. Quorum Health Res., LLC*, 485 F. App'x 783, 790 (6th Cir. 2012) (same). As to the defendants' relevance argument, the CJDs explicitly concluded that the drawings allegedly exported were ITAR-designated "during the period from January 1, 2009, through [summer 2021]." (D.N. 90-2, PageID.1034–37) Thus, the Court is not convinced that the CJDs have no relevance to the Indictment's export charges. *See* Fed. R. Evid. 401. In any event, the Court will defer until trial any ruling as to the relevance

---

[12] Defendants seemingly argue that treating the CJDs as dispositive would violate the Ex Post Facto Clause of the Constitution. (D.N. 90, PageID.1023) The United States agrees that the CJDs are not dispositive of the question of whether the technical data allegedly exported by Defendants was on the USML at the time of the exports. (D.N. 110, PageID.1428 (citing *United States v. Roth*, 628 F.3d 827, 832 (6th Cir. 2011))). Thus, the Court need not address the defendants' Ex Post Facto argument at this time.

of the CJDs so that Defendants' objections can be addressed in the proper context. *See Anderson*, 2023 WL 171776, at *1.

### III. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) GE Aviation's motion to intervene (D.N. 43) is **DENIED** as moot. GE Aviation's motions to seal (D.N. 43; D.N. 47) are **GRANTED**. GE Aviation's motion to intervene (D.N. 43), associated exhibit (D.N. 44), and reply (D.N. 48) shall remain **SEALED** in the record of this matter. GE Aviation's joint motion to seal and intervene (D.N. 43) shall likewise remain **SEALED**. GE Aviation's motion to seal its reply (D.N. 47) shall be **UNSEALED**.

(2) Defendants' motion to seal (D.N. 92) is **GRANTED**. Defendants' motion to exclude expert testimony (D.N. 93) shall be **SEALED** in the record of this matter. Defendants' motion to seal (D.N. 92) shall likewise remain **SEALED**.

(3) The United States' motion to seal (D.N. 146) is **GRANTED**. Docket No. 134 shall be **SEALED** in the record of this matter. The United States' motion to seal (D.N. 146) shall be **UNSEALED**.

(4) Defendants' motion to exclude (D.N. 90) is **DENIED** without prejudice. The Court will entertain evidentiary objections to the CJDs and TDCFs at trial.

January 23, 2025

David J. Hale, Judge
United States District Court